1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   XAI LOR,                              ) Case No.: 1:10-cv-01382 JLT
                                            )
12                  Plaintiff,              ) ORDER DIRECTING THE ENTRY OF
                                            ) JUDGMENT IN FAVOR OF DEFENDANT
13          v.                              ) MICHAEL J. ASTRUE, COMMISSIONER OF
                                            ) SOCIAL SECURITY, AND AGAINST
14   MICHAEL J. ASTRUE,                     ) PLAINTIFF XAI LOR
     Commissioner of Social Security,       )
15                                          )
                    Defendant.              )
16   _____ )

17          Xai Lor ("Plaintiff") asserts she is entitled to supplemental security income under Title XVI

18   of the Social Security Act.  Plaintiff argues the administrative law judge ("ALJ") improperly rejected

19   the opinion of an examining physician, which was a prejudicial error because it affected the

20   determination of her mental residual functional capacity.  Therefore, Plaintiff seeks judicial review

21   of the administrative decision denying her claim for benefits.  For the reasons set forth below, the

22   Court **AFFIRMS**.

23                          **PROCEDURAL HISTORY**[1]

24          Plaintiff filed an application for supplemental security income on August 17, 2004, alleging

25   disability beginning June 10, 1998.  AR at 174-77.  The Social Security Administration denied her

26   claim initially on November 8, 2004, and upon reconsideration on April 5, 2005.  *Id.* at 120-24, 62-

27   _____

28          [1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

                                        1

66.  After requesting a hearing, an ALJ determined Plaintiff was not disabled under the Social

Security Act, and issued an order denying benefits on November 6, 2006.  *Id.* at 98-103.

While Plaintiff's application was pending before the Appeals Council, Plaintiff filed a second

application for supplemental security income on December 15, 2006, again alleging disability

beginning June 10, 1998.  AR at 147-50.  Following initial denial of the second application, the

Appeals Council remanded the first decision and consolidated Plaintiff's applications for a single

decision by an ALJ.  *Id.* at 107-10.  Plaintiff testified at the hearing, after which an ALJ found

Plaintiff was not disabled and issued a decision denying benefits on May 2, 2008.  *Id.* at 20-26.  The

Appeals Council denied review of the ALJ's decision on June 29, 2010.  *Id.* at 7-9.  Therefore, the

ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by

the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

such as whether a claimant was disabled, the Court must determine whether the Commissioner's

decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y*

*of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938).  The record as a whole

must be considered, as "[t]he court must consider both evidence that supports and evidence that

detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for supplemental security income under Title XVI of the Social Security Act,

Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically

determinable physical or mental impairment that has lasted or can be expected to last for a

2

1  continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be

2  considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only
> unable to do his previous work, but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the immediate area in which
> he lives, or whether a specific job vacancy exists for him, or whether he would be hired
> if he applied for work.

7  42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

8  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of

9  disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other

10  substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

11  **DETERMINATION OF DISABILITY**

12  To achieve uniform decisions, the Commissioner established a sequential five-step process

13  for evaluating a claimant's alleged disability.  20 C.F.R. §416.920(a)-(f) (2010).  The process

14  requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the

15  period of alleged disability, (2) had medically determinable severe impairments (3) that met or

16  equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and

17  whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the

18  ability to perform other work existing in significant numbers at the state and national level.  *Id.*  In

19  making these determinations, the ALJ must consider objective medical evidence and opinion

20  (hearing) testimony.  20 C.F.R. §§ 416.927, 416.929.

21  A.   Relevant Medical Evidence

22  *Physician's Opinions*

23  Dr. Ekram Michiel completed a psychiatric evaluation on October 16, 2004.  AR at 311-12.

24  Dr. Michael noted Plaintiff reported sadness, difficulty sleeping at night due to pain and stress, and

25  problems eating.  *Id.* at 310.  Plaintiff reported she did not go to group therapy because she would get

26  nervous around people.  *Id.*  Dr. Michiel observed that Plaintiff had "poor eye contact throughout the

27  interview," and her "[s]peech was normal in process with slight latency."  *Id.* at 311.  Also, Dr.

28  Michiel determined Plaintiff's thought process was goal-oriented, and without auditory, visual, or

3

tactile hallucinations or delusions. *Id.* at 312. Dr. Michiel diagnosed Plaintiff with a depressive

disorder, not otherwise specified, and gave her a GAF score of 65.[2] *Id.* Dr. Michiel concluded: "I

believe that the patient is able to maintain attention and concentration and to carry out one or two

step simple job instructions . . . The patient is unable to carry out an extensive variety of technical

and/or complex instructions." *Id.* Further, Plaintiff could relate to and interact with coworkers,

supervisors, and the general public. *Id.*

Dr. Archimedes Garcia completed a psychiatric review technique form on November 5, 2004.

AR at 313-26, 329-30. Dr. Garcia concluded Plaintiff had an affective disorder that was not a severe

impairment. *Id.* at 313. Dr. Garcia noted there were no significant limitations on Plaintiff's

activities of daily living, and concluded Plaintiff was able to do simple, repetitive tasks. *Id.* at 329.

This assessment was "affirmed as written" by Dr. George Bugg on March 11, 2005. *Id.* at 313.

On May 10, 2007, Dr. Garcia completed a mental residual functional capacity assessment and

a second psychiatric review technique form. AR at 446-49, 453-66. Dr. Garcia opined that Plaintiff

had affective and affective-related disorders, including depression and post-traumatic stress disorder.

*Id.* at 446, 453. Also, Dr. Garcia found that Plaintiff was not significantly limited in her ability to

understand, remember, and carry out very short and simple instructions. *Id.* at 446. He indicated

that Plaintiff was not significantly limited and had the following abilities: to maintain concentration

for extended periods; to perform activities within a schedule, maintain regular attendance, and be

punctual with customary tolerances; to sustain an ordinary routine without special supervision; to

work in coordination or proximity to others without being distracted by them; and to make simple

work-related decisions. *Id.* However, Dr. Garcia believed that Plaintiff was moderately limited in

understanding, remembering, and carrying out detailed instructions. *Id.* at 446-47. Dr. Garcia

opined that Plaintiff had mild restrictions in her activities of daily living; mild difficulties in

maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or

---

[2] Global assessment functioning ("GAF") scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV). A GAF score between 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." *Id*.

pace.  *Id.* at 463.  Therefore, Dr. Garcia concluded Plaintiff could sustain simple repetitive tasks with adequate pace and persistence.  *Id.* at 448.  This assessment was "affirmed as written" by Dr. Murillo on October 2, 2007.  *Id.* at 448, 453.

*Mental Health Treatment*

On August 3, 2005, Plaintiff was hospitalized "as a danger to self" due to a depressed mood and suicidal thoughts.  AR at 422- 34.  Also, Plaintiff reported she had difficulty sleeping because of nightmares of her brother being killed in Laos, and said she heard voices screaming for help at times. *Id.* at 425, 428.  On August 4, 2005, Plaintiff had a mental status examination, which showed: "Thought process is intact.  Thought content feels guilty that she is not contributing to the household... Insight and judgment is poor.  Impulse is poor per history."  *Id.* at 423.  Plaintiff was discharged on August 4, 2005.  *Id.* at 424.

Following her hospitalization, Plaintiff sought treatment from Fresno County Mental Health, where Dr. Truong determined she had a GAF score of 50[3] on August 5, 2005.  AR at 415-21.  From August 2005 through February 2008, Plaintiff attended individual and group therapy sessions with Fresno County Mental Health.  AR at 372-434, 478-540, 567-83, 598-623.  Plaintiff's primary complaints included feeling helpless, worthless, and depressed.  *See, e.g., id.* at 485, 487, 493, 500, 519, 540, 574, 580.  In group therapy sessions, Plaintiff discussed topics such as stress in life, the impact of stress on concentration and daily activities, physical and emotional pain, interpersonal skills, bigamy, hopeful thoughts, fear, and depression.  *See, e.g. id.* at 481-86, 494, 580-81, 603-04.

In the therapy sessions, Plaintiff complained of an inability to help in around the house, but reported that when she was able to contribute to the family or do chores, her depression lessened. *See, e.g., id.* at 480 (Plaintiff "reported that her depressed feelings go up and down depending if she is able to do things to make her feel good"), 493 ("She stated that when she is able to be more functional she is less depressed"), *id.* at 497 (she tried to get more involved in the house on good days, but "feels very depressed and worthless because she is not able to contribute to the family to

_____

[3] A GAF score between 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairments in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *DSM-IV* at 34.

1   complete the chores around the house").  Similarly, on June 19, 2007, Plaintiff stated at times "she is
2   able to assistt her family with simple chores like laundry, straightening up things around the house,
3   and doing simple cooking for the family." *Id.* at 485.  Frequently, Plaintiff was encouraged to do
4   simple activities with her family, and to get involved with the community. *See, e.g. id.* at 480, 575-
5   76, 599-600, 602-04.

6   B.  Hearing Testimony

7            On April 25, 2008, Plaintiff testified before an ALJ with the assistance of a Hmong
8   interpreter.  AR at 57.  Plaintiff testified that she had eleven children, and the five under age eighteen
9   lived at home with her and her husband, who worked as a farmer. *Id.* at 61, 66.  Plaintiff stated that
10  she had a drivers license, but drove "[m]aybe once a month to get medication or to get out." *Id.* at
11  63.  Plaintiff said she did not have an education, and had not received any vocational training, though
12  she took some adult education classes when she first came to the United States.  AR at 64-65.  She
13  stated that she did not read, speak or understand English, and was unable to read or write in Hmong.
14  *Id.* at 64.

15           Plaintiff worked in 2000 for "nearly a month" making cookies, but reported her back pain
16  was so severe she "had to quit."  AR at 65.  Plaintiff believed that she could not work due to severe
17  back pain and headaches. *Id.* at 66-67.  With regard to her mental condition, Plaintiff testified she
18  had a "memory problem" and sometimes forgot she had put something on the stove. *Id.* at 67.
19  However, Plaintiff said her concentration was good, and other times her concentration was "so bad"
20  because she would "think[] of doing one thing, and end up not doing anything." *Id.* at 72.  Plaintiff
21  estimated she could concentrate for "maybe 20 minutes," or as long as it took to boil vegetables in
22  water. *Id.*

23           According to Plaintiff, she was very depressed and attempted suicide three or four years
24  before the hearing: "I was not able to work.  I was very envious of people who have houses, cars,
25  beautiful things, I could not do any kind of work to be like [them].  That's why I tried to kill myself."
26  AR at 68-69.  Plaintiff reported that after she attempted suicide, she began treatment at Fresno
27  County Mental Health. *Id.* at 68. Plaintiff said she still has suicidal thoughts "because [her] life

28

1  seems valueless now." *Id.* Plaintiff stated that when she went outside to garden "away from the

2  noises from the house," it helped with her depressive feelings. *Id.* at 69-70.

3      Plaintiff took medication for her depression, which she said made her sleepy and helped her

4  "forget all about [her] depression." AR at 76. She stated once the medicine "wears out" she would

5  get depressed again. *Id.* Plaintiff said she would "lie down for a long, long time" until the

6  medication wore out and she was able to go outside. *Id.* Plaintiff testified she takes this medication

7  at night before she goes to bed. *Id.* at 77. She stated that she feels "very fatigued" the next morning.

8  *Id.* Plaintiff did not believe she could work eight hours a day, fives day a week job because she

9  "ha[d] a sickness." *Id.*

10      Vocational expert ("VE") Cheryl Chandler testified after Plaintiff. AR at 78. The VE stated

11  that Plaintiff's one month of past work was insufficient to constitute past relevant work. *Id.* at 78-

12  79. The ALJ asked the VE to consider the physical residual functional capacity assessment offered

13  by Dr. Ecklelum, and the VE confirmed Plaintiff would be limited to sedentary work if the ALJ

14  adopted that assessment. *Id.* at 79. Also, the VE confirmed Plaintiff would be "limited to the world

15  of unskilled work," due to her lack of education. *Id.* The VE stated there were simple, repetitive,

16  unskilled jobs available at the medium exertional level, including dishwashing, DOT 318.687-101;

17  custodial jobs, DOT 381.687-018; and gardening jobs, DOT 403.667-010. *Id.* at 79-80. The VE

18  opined that someone who could not concentrate "in more than 20-minute increments" would be

19  unable to work in these positions. *Id.* at 80. Further, a worker would not be able to have one of

20  these positions if she was unable to "show up consistently eight hours a day, five days a week, either

21  due to depression or physical problems." *Id.* When asked about the language barrier, the VE stated

22  some custodial jobs would be affected, but not the other job positions. *Id.* at 81.

23  C.  The ALJ's Findings

24      Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial

25  gainful activity since the application date of August 17, 2004. AR at 22. Second, the ALJ found

26  Plaintiff's depressive disorder is a severe impairment, but it did not meet or medically equal a listing.

27  *Id.* at 22-23. The ALJ determined Plaintiff had the residual functional capacity ("RFC") "to perform

28  simple repetitive work at all exertional levels." *Id.* at 24. With this RFC, Plaintiff was capable of

7

performing work in the national economy.  *Id.* at 25-26.  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  *Id.* at 26.

## DISCUSSION AND ANALYSIS

Plaintiff asserts the ALJ failed to articulate a reason for rejecting the opinion of examining physician Dr. Michiel, and improperly adopted the opinions of non-treating physicians over the opinion of Dr. Michiel, because the ALJ concluded Plaintiff could perform "simple repetitive work." (Doc. 13 at 4-5).  In addition, Plaintiff argues this error was prejudicial because the jobs cited as examples of work Plaintiff could complete with the RFC given by the ALJ "require reasoning level two which is inconsistent with one and two step work."  *Id.* at 10.  Plaintiff alleges that if the ALJ adopted the opinion of Dr. Michiel, Plaintiff would be limited to one or two step work, at Reasoning Level 1.  *Id.*

On the other hand, Defendant argues, "In assessing Plaintiff's RFC, the ALJ properly considered the medical evidence and found that Plaintiff could perform simple repetitive work at all exertional levels.  The opinions of consultative examining psychiatrist, Dr. Michiel, and the non-examining State agency psychiatrists constituted substantial evidence to support the ALJ's RFC finding."  (Doc. 17 at 7).  In addition, Defendant argues, "Dr. Michiel's opinion that Plaintiff could perform 'one or two step simple job instructions' was consistent with the opinion of the nonexamining State agency psychiatrists and the ALJ's RFC finding that Plaintiff could perform simple, repetitive tasks."  *Id.* at 8.

A.   The ALJ properly interpreted the opinion of Dr. Michiel.

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight in disability cases.  *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Also, an examining physician's opinion is given more weight than the opinion of a non-examining physician.  20 C.F.R. § 404.1527(d)(2).   Notably, there is no treating physician, and the opinion of Dr. Michiel, examining physician, should be afforded the greatest weight.

1    Plaintiff asserts Dr. Michiel expressly *limited* Plaintiff to "one and two step job instructions,"

2    and that this *limitation* was rejected by the ALJ.  (Doc. 13 at 5; Doc. 18 at 3-4).  However, Dr.

3    Michiel's opinion regarding "one and two step job instructions," was not set forth as a limitation but,

4    stead, was as an expression of Plaintiff's *ability*.  *See* AR at 312.  The limitation set forth by Dr.

5    Michiel in this regard, was only an inability "to carry out an extensive variety of technical and/or

6    complex instructions."  *Id.*

7    Recently, the Court affirmed that the ability to carry out one and two-step instructions was

8    encompassed by an RFC limiting the claimant to "simple, routine work."  This Court explained:

9        The ALJ was entitled to interpret [the doctor's] findings to formulate his RFC, and he
     was not required to adopt the exact language used by [the doctor].  This is so because

10   [the doctor's] finding regarding tasks with one-to two-step instructions was not phrased
     as a limitation, but rather an affirmative statement of what Plaintiff could do.  The actual

11   limitation [the doctor] found was one for jobs involving tasks with complex and
     technical instructions…. Here, the ALJ's RFC for simple, routine work was a rational

12   interpretation of [the doctor's] findings, and thus it must be upheld.

13   *Salas v. Astrue*, 2011 U.S. Dist. LEXIS 69620 at *21 (E.D. Cal. June 29, 2011); *compare also*

14   *Navarro v. Astrue*, 2010 U.S. Dist. LEXIS 133685 (C.D. Cal. Dec. 16, 2010) (the physician *limited*

15   the claimant to one- and two step tasks, and the RFC for "simple work" did not encompass the

16   limitation) *with Wilson v. Astrue*, 2010 U.S. Dist. LEXIS 105658 (C.D. Cal. Oct. 1, 2010) (the

17   physician opined the claimant could follow one and two-step instructions, which was not an actual

18   limitation to *only* one and two-step instructions, and therefore consistent with an RFC limiting the

19   claimant to "simple, repetitive tasks").  Here, ALJ stated he gave "great weight" to the opinion of Dr.

20   Michiel when concluding Plaintiff was capable of "simple repetitive work."  AR at 25.  Such an

21   interpretation was within the province of the ALJ and was consistent with non-examining

22   physicians' opinions that Plaintiff could perform simple, repetitive tasks.  Therefore, the opinion of

23   Dr. Michiel was given the proper weight and was not rejected improperly by the ALJ in determining

24   Plaintiff's RFC.

25   B.  Plaintiff's RFC was supported by substantial evidence in the record.

26   As noted, the ALJ's conclusion that Plaintiff could perform "simple repetitive work" was

27   supported by Dr. Michiel's opinion.  As an examining physician whose opinions are based upon

28   independent clinical findings substantial evidence, Dr. Michiel's conclusion constitutes substantial

evidence.  *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining physicians Dr. Garcia, Dr. Bugg, and Dr. Murillo further support the RFC determination.

In November 2004, Dr. Garcia opined Plaintiff was able to perform simple, repetitive tasks, and this assessment was affirmed by Dr. Bugg in 2005.  *Id.* at 329, 331-32.  In 2007, Dr. Garcia determined Plaintiff was not significantly limited in her ability to understand, remember, and carry out very short and simple instructions.  *Id.* at 446.  Therefore, Dr. Garcia concluded Plaintiff could sustain simple repetitive tasks with adequate pace and persistence, and this assessment was affirmed by Dr. Murillo on October 2, 2007.   *Id.* at 446, 448.   These opinions are consistent with Dr. Michiel's opinion that Plaintiff could not carry out technical or complex instructions.  *See Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) ("reports of the nonexamining advisor . . . may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").  Therefore, in addition to Dr. Michiel's opinion, the opinions of Dr. Garcia, Dr. Bugg, and Dr. Murillo constitute substantial evidence in support of the RFC.

C.   Plaintiff's RFC allows for her to perform work with Reasoning Level One or Two.

In the *Dictionary of Occupational Titles*,[4] each job description includes a General Educational Development ("GED") definition that "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance."  *Salas*, 2011 U.S. Dist. LEXIS 69620 at *16, quoting *Grigsby v. Astrue*, 2010 U.S. Dist. LEXIS 5465 (C.D. Cal. Jan. 22, 2010).  The GED scale includes a scale for "reasoning development," which ranges from Level 1 (low) to Level 6 (high).  *Id.*  Reasoning Levels 1 and 2 require the following cognitive functioning:

Level 1:  Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

Level 2:  Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.

---

[4] The *Dictionary of Occupational Titles* ("DOT") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy.  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).

10

1   *DOT*, Appendix C, Section III.  Notably, though a one to two-step instruction limitation would

2   confine a worker to reasoning Level 1, a limitation to simple, repetitive work encompasses both

3   Reasoning Levels 1 and 2.  As a result, with an RFC of "simple repetitive work," Plaintiff has the

4   ability to perform the jobs identified by the vocational expert and the ALJ that require Reasoning

5   Level 2.  *See, e.g., Lara v. Astrue*, 305 Fed. Appx. 324, 326 (9th Cir. 2008) ("Reasoning Level 1 jobs

6   are elementary. . . and someone able to perform simple, repetitive tasks is capable of doing work

7   requiring more rigor and sophistication—in other words, Reasoning Level 2 jobs"); *Salas*, 2011 U.S.

8   Dist. LEXIS 69620 at * 21-22 (finding a mental RFC for simple routine work limited the claimant to

9   Reasoning Levels 1 and 2); *Grigsby*, 2010 U.S. Dist LEXIS 5465 at *6-7 (explaining a limitation to

10  simple, repetitive work encompassed the ability to perform jobs at Reasoning Level Two, but a

11  limitation to one or two-step instructions limited an individual to Reasoning Level One).  Therefore,

12  the ALJ properly concluded Plaintiff could perform work in the national economy, including the

13  named positions of dishwashing (DOT 318.687-010) and custodial work (DOT 381.687-018) that

14  require Reasoning Level 2.

15  **CONCLUSION**

16          For these reasons, the ALJ properly interpreted the medical evidence, including the opinion

17  of Dr. Michiel, to determine Plaintiff could perform "simple repetitive work."  Therefore, the ALJ's

18  determination of the evidence must be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)

19  ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's

20  conclusion that must be upheld.").  Further, the RFC set forth by the ALJ is supported by substantial

21  evidence in the record, and the RFC allows for Plaintiff to perform work that requires Reasoning

22  Level 2.  Therefore, the ALJ's conclusion that Plaintiff was not disabled was based upon proper legal

23  standards and is supported by substantial evidence.

24          Accordingly, **IT IS HEREBY ORDERED**:

25      1.      Plaintiff's appeal from the administrative decision of the Commissioner of Social

26              Security is **DENIED**; and

27  ///

28  ///

1    2.    The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant

2         Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Xai Lor.

3    IT IS SO ORDERED.

4    Dated:   **August 30, 2011**                                                    **/s/ Jennifer L. Thurston**
                                                                  UNITED STATES MAGISTRATE JUDGE

12